UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| EARNEST COOLEY | CIVIL ACTION NO. 20-cv-0106 |
| VERSUS | CHIEF JUDGE HICKS |
| YRC, INC., ET AL | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

A driver for YRC, Inc. backed a tractor-trailer rig up to a Shreveport loading dock owned by a local business. Earnest Cooley ("Plaintiff"), an employee of the business, began to use a forklift to load the trailer. The tractor-trailer separated from the loading dock and caused Plaintiff and his forklift to fall about four feet to the ground. Plaintiff alleges that the truck rolled forward because the YRC driver did not properly brake/chock his truck. Plaintiff filed suit in state court against YRC and its insurer, Old Republic, and alleged serious personal injuries, including traumatic brain injury and multiple spine issues.

YRC (a citizen of Delaware and Kansas) and Old Republic (a citizen of Pennsylvania) removed the case based on their diversity of citizenship with Plaintiff (a citizen of Louisiana) and an amount in controversy in excess of $75,000. Before the court is Plaintiff's Motion to Amend Complaint (Doc. 21) by which he seeks to add new defendant Gerald Schildt, the driver of the truck who was previously unknown to Plaintiff. Mr. Schildt shares Plaintiff's Louisiana citizenship, so his addition as a defendant would destroy diversity and require remand to state court. Defendants oppose the proposed

amendment. For the reasons that follow, it is recommended that the motion for leave to amend be granted and the case be remanded to state court.

**Relevant Facts**

The Shreveport Police Department prepared an accident report after Plaintiff was hurt. Doc. 25, Ex. A. The report stated that the driver of the YRC truck said that he backed his trailer to the loading dock at the Louisiana Association for the Blind, set the brakes on the truck, and put a tire chock in front of the tires on the trailer. The report stated that Plaintiff was backing out of the trailer on a forklift when the truck and trailer jumped the chock and rolled forward. This resulted in Plaintiff and the forklift falling out of the trailer. A witness who was working in the area said that he never heard the truckdriver set the brake, but he did see him chock the rear driver tire. He saw the tractor-trailer start rolling toward the street and, after Plaintiff and his forklift fell out of the trailer, the truck continued until it was stopped at the curb on the other side of the street.

The accident report did not list the name of the truck driver anywhere in the report. It simply listed YRC, of Overland Park, Kansas, as the owner of the truck. Plaintiff filed suit in state court on December 10, 2019. He named as defendants YRC and Old Republic. Plaintiff alleged that YRC was the "employer of the unknown defendant driver," that he had a cause of action in negligence against the driver, and that YRC was responsible for that negligence because the driver was acting in the course and scope of his work. The fault of the defendant employee was said to include failure to apply the brakes properly, failure to properly chock the trailer wheels, and failure to secure the trailer to the loading

dock. Plaintiff also alleged violations of various federal safety regulations regarding parking brakes and related matters.

Plaintiff's state court petition was accompanied by interrogatories and requests for production of documents. Interrogatory No. 1 asked for the name and address of all occupants of the YRC vehicle, and Interrogatory No. 2 asked for the name and address of the employee of YRC who was driving the tractor-trailer involved in the incident.

Defendants removed the case on January 22, 2020 before having to respond to the discovery. They soon filed an answer (Doc. 8). The answer did not disclose the identity of the unknown YRC driver. Plaintiff's counsel represents that he requested the identity of the driver when counsel conferred on March 18, 2020 as part of the scheduling conference process. He states that counsel for YRC and Old Republic would not disclose the driver's identity at that time and said it would be made available with initial disclosures.

Plaintiff received the initial disclosures a week later, on March 25, and they listed the driver as Gerald Schildt. The disclosures did not include Mr. Schildt's address; they listed instead the address for defense counsel. Defense counsel state that they did this because any contact with Mr. Schildt, a current employee of their client, should be through counsel rather than directly.

Plaintiff's counsel reports that he then used a public database to learn that there was a Gerald Schildt residing in Caddo Parish, and he sent a letter to defense counsel to ask that they confirm whether he was the driver. On the same day counsel sent that letter, March 26, the parties filed a Rule 26 case management report (Doc. 18) in which Plaintiff stated

that he "foresees the need to amend his petition/complaint once the identity of the unknown driver of the tractor-trailer is revealed," and he noted that the defendants may object.

Defense counsel soon confirmed the identity of Mr. Schildt. Plaintiff promptly circulated a proposed amended complaint on April 1, 2020 and asked whether counsel objected to the filing. Defense counsel did object. Plaintiff then filed his motion for leave to amend, and the issues were briefed. The proposed amended complaint essentially repeats the allegations of the original petition but identifies Mr. Schildt as the driver who is alleged to be personally at fault for causing the accident.

**Hensgens and the Proposed Amendment**

If after removal a plaintiff seeks to join a new defendant whose joinder would destroy subject matter jurisdiction, the court may (1) deny joinder or (2) permit joinder and remand the case. 28 U.S.C. § 1447(e). The court's decision of the issue is guided by the factors set forth in Hensgens v. Deere & Co., 833 F.2d 1179 (5th Cir. 1987). Although leave to amend is ordinarily freely granted, Hensgens instructs that when a district court is faced with an amendment that adds a non-diverse party it "should scrutinize that amendment more closely than an ordinary amendment." Id. at 1182.

The court must balance the defendant's interests in maintaining the federal forum with the competing interest of not having parallel lawsuits. Factors to be considered include (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for the amendment, (3) whether the plaintiff will be significantly injured if the amendment is not allowed, and (4)

any other factors bearing on the equities. Hensgens, 833 F.2d at 1182; Hawthorne Land Co. v. Occidental Chemical Corp., 431 F.3d 221, 227 (5th Cir. 2005).

**Hensgens Analysis**

**A. Has Plaintiff Been Dilatory?**

Plaintiff has demonstrated constant effort to learn the identity of the driver from the moment suit was filed in state court. His interrogatories, informal requests, and request for confirmation were made promptly and focused on learning the name of the driver. There is no indication that Plaintiff has been dilatory.

**B. To What Extent is the Purpose of the Amendment to Defeat Federal Jurisdiction?**

Plaintiff's counsel represents that he has been forthcoming since the origin of this litigation that he intends to sue the driver, and the citizenship of the driver for the Kansas trucking company was unknown until recently. Counsel considers the driver an indispensable defendant who may be liable for his client's injuries. But the driver is not indispensable within the meaning of Fed. R. Civ. Pro. 19. "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit" and "[t]here is nothing in Louisiana tort law to the contrary." Temple v. Synthes Corp., 111 S. Ct. 315, 316 (1990). But it is certainly reasonable for a plaintiff to want to name all alleged tortfeasors in one efficient suit.

Plaintiff states that his desire to name the driver is motivated in part because YRC has denied vicarious liability for the driver's acts. The pleadings support this. Plaintiff alleged in Paragraph 3 of his original petition that the unknown driver was acting in the

course and scope of his employment with YRC at the time of the accident so that the negligence and fault of the driver was imputed to YRC. The defendants responded in Paragraph 4 of their answer that these allegations constituted legal conclusions to which no response was required and, to the extent a response was required, they denied the allegations for lack of sufficient information. So Plaintiff could not be assured that YRC would accept vicarious liability if the driver were proved to be at fault.

Plaintiff states that he plainly has a cause of action against Mr. Schildt, as the person whose negligent acts allegedly caused the accident, and it is especially important that he be able to sue Mr. Schildt if YRC is denying that it is vicariously liable for Schildt's actions. Defense counsel respond (Doc. 25, p. 2-3) that they "can now admit, after further investigation, that Mr. Schildt had been acting within the scope of his employment with YRC (at) the time of the accident." That is now a binding judicial admission,[1] but of course Plaintiff did not have the benefit of such a straightforward answer when he filed his motion for leave to amend.

Defendants argue that, because YRC now concedes vicarious liability, the addition of Mr. Schildt would serve no purpose other than to defeat diversity jurisdiction. They argue that "Plaintiff cannot recover personally from Mr. Schildt" because he was acting in the course and scope of his employment for YRC. The concession of vicarious liability might reduce Plaintiff's desire to sue the driver, but Defendants are incorrect in their suggestion that the concession precludes the driver from being held personally liable.

---

[1] Mayo v. C Cross Transport, Inc., 2019 WL 2404544, *6 (W.D. La. 2019)

Under Louisiana law, an employee may be held personally liable for negligence he committed during the course and scope of his work for an employer. "If the elements for imposing individual liability on the corporate employee are met, it does not matter that the corporation might also be liable." Ford v. Elsbury, 32 F.3d 931, 36 (5th Cir. 1994), citing H.B. "Buster" Hughes, Inc. v. Bernard, 318 So.2d 9, 12 (La. 1975). For example, the Fifth Circuit held in Ford that a plant manager could be personally liable for an explosion under the familiar Canter v. Koehring Co., 283 So.2d 716, 721 (La. 1973) test for personal liability under Louisiana law. And a Burger King employee who pushed the wrong button and undercooked chicken nuggets could be held personally liable to a customer who fell ill. Rabalais v. Strategic Restaurants Acquisition Co., LLC, 2019 WL 3778667 (W.D. La. 2019) (Drell, J.). See also Sims v. Jefferson Downs Racing Ass'n, Inc., 778 F.2d 1068, 1081 (5th Cir. 1985) ("Under Louisiana law, a plaintiff who is injured by the acts of a corporate officer can sue both the officer individually and the corporation."). Accordingly, Plaintiff can recover from Mr. Schildt personally, regardless of whether Schildt was acting in the course and scope of his employment.

Defendants cite cases in which courts have denied leave to file a Hensgens amendment when, among other things, an employer would be able to satisfy any judgment. It is true that the addition of an individual employee, such as a Wal-Mart associate in a slip-and-fall case, often adds little additional comfort as far as the ability of the plaintiff to recover a judgment. Accordingly, several decisions from the Western District of Louisiana have denied efforts to add diversity-destroying retail employees of large companies in merchant liability cases. Mayo, 2019 WL 2404544, n.3 (collecting cases).

But Wal-Mart is not the defendant in this case. It is YRC, and the record contains no information about YRC's financial status or ability to satisfy a potentially large judgment. Online news sources indicate that YRC Worldwide, Inc. is the holding company for the YRC shipping businesses. The international company has been around for decades, but its stock (YRCW) price recently slid to $1.49 from a 52-week high near $5. The company has fallen into arrears on employee health benefit contributions, ordered layoffs and furloughs, and reduced officer compensation. Old Republic is also a defendant, but the record does not indicate its policy limits or whether the insurer stipulates that there is coverage for this accident. Old Republic's answer admits that a policy was in effect at the time, then refers to its terms and provisions. Little is known about Mr. Schildt as well. He may have few assets, or he may be wealthy, own real estate, or hold a lucky lottery ticket.

Attorneys who file tort suits against merchants and other deep-pockets or well-insured defendants do not usually name as a defendant a low-wage employee who may have been somewhat involved in or had a passive relationship to the accident. But attorneys for tort claimants often sue individual truck drivers, equipment operators, railroad engineers, and similarly situated employees who are alleged to have been directly responsible for an accident. The attorney often does so regardless of whether diversity jurisdiction is an issue, and even if the employer and insurer are also named as defendants.

There are reasons for suing the driver beyond the mere ability to collect a judgment, such as the additional discovery tools available with respect to a party as opposed to a non-party witness. And truck drivers, in particular, can be hard to find and subpoena for a deposition or trial, especially if they have changed employers since the accident. The court

has more ability to obtain the driver's presence and participation if he is a named party. See Anderson v. CSX Sealand, Inc., 1997 WL 16617, *2 (E.D. La. 1997) (allowing amendment to add non-diverse driver because it made legal and practical sense to name the actual tortfeasor, and there were procedural and discovery advantages to doing so). For these reasons, Plaintiff wishing to sue the driver personally in this case is not a persuasive indication of intent to destroy federal jurisdiction.[2]

### C. Will the Plaintiff be Significantly Injured Absent the Amendment?

The Hensgens factors are to help the court "balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits." Id. at 1182. One factor is "whether plaintiff will be significantly injured if amendment is not allowed." Id. Plaintiffs often argue that denial of leave to amend will subject them to the burden of a parallel lawsuit in state court, but that cannot automatically equate to significant injury because that will always be the case if leave is denied and the plaintiff is serious about pursuing the new defendant. Lauzon v. Pulte Homes, Inc., 2012 WL 4795994, *4 (W.D. Tex. 2012) ("the additional expense of maintaining a separate lawsuit cannot be the Court's only consideration when determining whether Plaintiffs will be significantly injured if amendment is not allowed.").

---

[2] This does not mean that the court will always allow a diversity-destroying amendment that names a truck driver as a new defendant. Each case is decided on its facts, as evidenced by the denial of leave to amend and name the driver in C Cross v. Mayo, 2019 WL 2404544. That case was different because, among other reasons, there was an especially weak claim of liability against that driver (who delivered a trailer that later collapsed) and there was an indication of $1,000,000 in insurance available to satisfy any judgment.

Courts often look to the strength of the claim against the proposed defendant when assessing this factor because a plaintiff will not be significantly injured by the denial of leave to add a meritless claim.  Wilson v. Bruks-Klockner, Inc., 602 F.3d 363, 368 (5th Cir. 2010).  Plaintiff has alleged a viable claim against Mr. Schildt, who is said to have personally committed the negligence that caused the accident.  Plaintiff argues that he will be forced to file a separate suit in state court against Mr. Schildt if the proposed amendment is not allowed, and simultaneously litigate this overlapping case in federal court.

There may be some doubt about whether Plaintiff would actually go to the trouble to file suit against Mr. Schildt in a separate forum if his proposed amendment were denied.  But counsel might feel compelled to do so, given the risks that his client would look unkindly upon him if YRC turned out to be broke and Old Republic denied coverage.  If plaintiff filed such a separate suit, it would give rise to the potential for inconsistent verdicts in state and federal court, which is to be avoided.  It would also lead to unnecessary cost and duplication of judicial resources.  As noted in a similar Hensgens contest, "the plaintiff would be prejudiced by a denial of the motion to amend…, while the only prejudice the defendant will suffer is returning to state court, where the matter would have remained had the identity of the truck driver been known at the time of the filing of the state court petition." Lansing v. Service Transport Company, 2007 WL 9709952, *1 (M.D. La. 2007).

### D. Analysis and Conclusion

Hensgens requires the court to balance the defendants' interest in maintaining this federal forum with Plaintiff's competing interest of not having parallel lawsuits.  It is an exercise of discretion that is guided by the factors discussed above.  The first factor is

whether Plaintiff was dilatory in seeking the proposed amendment. He was not, so that weighs in his favor.

The next factor is the extent to which Plaintiff's intent was to destroy jurisdiction. The court finds little evidence that Plaintiff's primary motivation was to destroy diversity. He made efforts to discover the identity of the driver before it was known whether the employee of the Kansas company might be from Louisiana. And, as noted, it is fairly common for plaintiffs to sue the individual driver at fault in trucking accidents. What Plaintiff is doing here is no different than in other similar lawsuits, and there are sound legal and practical reasons for Plaintiff to name the driver as a defendant. Plaintiff might not mind returning to state court, but that is not a factor. The facts in this case make this factor weigh in favor of amendment and remand.

The final factor is whether Plaintiff will be significantly injured if leave to amend is denied. There is some plausible likelihood that this plaintiff would, out of an abundance of caution, file a separate claim against Mr. Schildt in state court if leave is denied. Such duplication and waste of resources is not desirable. Plaintiff would also be deprived of the procedural advantages of having the driver be a party in this case as it moved forward in federal court.

The arguments of counsel and all relevant factors have been carefully considered. The undersigned believes that the best exercise of the court's discretion under these circumstances is to grant leave to amend and allow Plaintiff to name as a defendant the active tortfeasor who is accused of causing a serious accident. The <u>Hensgens</u> factors in this case tip the scales in favor of allowing leave to amend more than preserving the

removing defendant's interests in maintaining a federal forum. The case can then proceed in state court with all relevant defendants joined.

Accordingly,

It is recommended that Plaintiff's Motion for Leave to File Amended Complaint (Doc. 21) be granted and that this case be remanded to the First Judicial District Court, Caddo Parish, Louisiana, where it was pending as civil action no. 621,117-B.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 8th day of June, 2020.

Mark L. Hornsby
U.S. Magistrate Judge